# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| VERSUS | NUMBER: 15-091 |
| ROBERT DURST | SECTION C (1) |

## ORDER & REASONS

Before this Court is Defendant Robert Durst's Motion to Review Magistrate Judge Shushan's Order Denying Durst's Motion to Compel. Rec. Doc. 88. The government has filed an opposition to the motion. Rec. Doc. 95. Durst was granted leave to reply and has filed a reply to the opposition. Rec. Doc. 103. Magistrate Judge Shushan issued the order on August 3, 2015 denying Defendant Durst's motion to compel the government to produce the handwriting comparisons used to support applications for the arrest warrant and search warrants for Durst's hotel room and his Houston home. Rec. Docs. 80, and 58.  For the following reasons, the motion is GRANTED and Magistrate Judge Shushan's order is set aside.

**I. Background**

Defendant, Robert Durst is currently under indictment for allegedly violating 18 U.S.C. §922(g)(1) and 924(a)(2), for being a felon in possession of a firearm. Rec. Doc. 9. The indictment stems from events occurring on March 14, 2015 at the J.W. Marriott Hotel in New Orleans. While at the hotel to execute a probable cause arrest warrant for Durst issued by California authorities, federal agents arrested Durst, registered at the hotel under the alias "Everette Ward." Rec. Doc. 52-1 at 6, citing the FBI agent's report, FD-302. Los Angeles County authorities issued the warrant for Durst's arrest based on the affidavit of LAPD detective Luis A. Romero. Rec. Doc. 58. (Exhibit A) ("Romero Affidavit"). The arrest warrant was issued on a charge of murder. *Id.*

Subsequently, the agents escorted Durst to his hotel room to inventory and itemize his belongings prior to bringing him to Orleans Parish Prison for booking. Rec. Doc. 1 at 3. During the course of the inventory, detectives with the Los Angeles Police Department ("LAPD") requested the federal agents cease the inventory and secure the hotel room as the LAPD detectives were en route to New Orleans to secure a search warrant. Rec. Doc. 1 at 6. LAPD detectives had been in Houston, Texas investigating their murder case against Durst but began driving to New Orleans. *Id.* A search warrant for the hotel room was issued by Criminal District Court for the Parish of Orleans around 2:00 am on March 15, 2015. *Id.* at 6. The affidavit in support of the application for the warrant was from LAPD detective Michael Whelan. Rec. Doc. 58 (Exhibit B) ("Whelan Affidavit"). The firearm that is the subject of the indictment before this Court, was recovered from Durst's hotel room. *Id.* at 4.

Two days later, on March 17, 2015, a search warrant was obtained for three condominium units owned by Durst at 2520 Robinhood Street, Houston, Texas. This warrant was based on an affidavit from Houston Police Department sergeant John Clarke. Rec. Doc. 58 (Exhibit C) ("Clarke Affidavit").

Durst has filed a Motion to Suppress evidence from his arrest, subsequent interrogation, the warrantless search of his hotel room and the execution of a search warrant on that same hotel room after the prior, warrantless search. Rec. Doc. 52. The motion to suppress is currently set for an evidentiary hearing before this Court on September 16, 2015. Rec. Doc. 56. On June 30, 2015, Durst filed his Motion to Compel Production of Handwriting Comparisons in preparation for the suppression hearing. Rec. Doc. 58. Durst requested six handwriting comparisons that were referenced in the three affidavits given in support of the arrest and search warrants mentioned above. Specifically, the defense has requested the comparisons by the following examiners completed on the dates indicated:

2

(1) William Leaver - February 28, 2001 (used in Texas search warrant only);

(2) William Leaver - October 23, 2001 (used in Texas search warrant only);

(3) William Leaver - June 20, 2002 (used in arrest warrant, Louisiana search warrant and Texas search warrant);

(4) William Leaver - July 2, 2003 (used in Texas search warrant only):

(5) Sean Espley - October 23, 2003 (used in Texas search warrant only); and

(6) Lloyd Cunningham - November 4, 2014 (used in arrest warrant, Louisiana search warrant and Texas search warrant). Rec. Doc 58-1 at 1-2.[1]

Durst has argued he is entitled to the handwriting reports for three reasons: (1) production is required under Federal Rule of Criminal Procedure 16 since the comparisons are material to the motion to suppress; (2) under *Brady v. Maryland* production is required because the conflicting comparisons are favorable to the accused; and (3) he has raised a *Franks* challenge to the arrest warrant, and is entitled to the reports in order to make the preliminary showing as required. *Id.* at 3.

The government had submitted an opposition to the motion, and the defense filed a replied. Rec. Docs. 70 & 79.  On August 3, 2015, Magistrate Judge Shushan issued her order denying Durst's request for the handwriting comparisons, finding that F.R.Cr.P. does not require their production because: (1) the comparisons were not material to the prosecution of the firearm charge; (2) the United States is not investigating or prosecuting the murder of Susan Berman; and (3) the United States is not in possession, custody or control of the handwriting reports. Rec. Doc. 80 at 5-6.

---

[1]The handwriting comparisons all concern an anonymous letter received by the Beverly Hills Police Department on December 27, 2000, postmarked December 23, 2000, which read "1527 Benedict Canyon" and "Cadaver". The body of Susan Berman had been discovered by LAPD at that address on December 24, 2000 - one day after the note had been postmarked. Romero Affidavit at 3.

3

Additionally, Magistrate Judge Shushan found that since the Clarke affidavit contained a history of all the handwriting comparisons, there was no need to turn over the individual comparisons. *Id.* at 6.

Durst is now asking this Court to review Magistrate Judge Shushan's order denying his motion. The defense objects to the findings that the handwriting comparisons are not material and not within the government's possession, custody or control. Rec. Doc. 88-1 at 2. In addition, the defense argues that Magistrate Judge Shushan's order not does directly address whether any of the comparisons fall under *Brady,* but instead phrased the central issue as whether Durst was entitled to the comparisons in order to make the preliminary *Franks* showing. *Id.* at 3. Durst's memorandum in support of his current motion states there are three purposes for which he is requesting the comparisons: (1) verifying that the arrest and search warrant affidavits correctly report what the comparisons showed; (2) using the comparisons to make a preliminary showing under *Franks*; and (3) using the comparisons as primary and impeachment evidence at the suppression hearing. *Id.*

In its opposition to the original motion to compel, the government argues that (1) the motion to compel is directed at the wrong entity in the wrong prosecution - it should be directed to the Los Angeles County District Attorney in the murder prosecution; (2) the defense cannot show the relevancy of the handwriting comparisons to a *Franks* hearing; and (3) Durst's accusations of falsehood and omissions in the Romero and Whelan affidavits are unfounded. Rec. Doc. 70. In its current opposition to the motion to review, the government maintains that the comparisons are not discoverable under Rule 16 since they are not relevant to the instant prosecution for felon in possession of a firearm, the United States's Attorney's Office for the Eastern District of Louisiana is not responsible for the investigation or prosecution of Susan Berman's murder and the comparisons are not in the government's possession. Rec. Doc. 95.

**II. Law & Analysis**

Under Federal Rule of Criminal Procedure 59(a), "a party may serve and file objections to the [magistrate court's] order within 14 days after being served with a copy of a written order." Further, the district court judge may "modify or set aside any part of the order that is contrary to law or clearly erroneous." F.R.Cr.P. 59(a). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948). Magistrate Judge Shushan's order is a thoughtful and reasoned order, however it is the opinion of this Court that it was clearly erroneous based on the evidence before it.

### A. Rule 16 and *Brady* Claims

Rule 16(a)(1)(E) of the Federal Rules of Criminal Procedure requires the government to produce upon the defendant's request, for inspection, and to copy or photograph "books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and: (i) the item is material to preparing the defense; (ii) the government intends to use the item in its case-in-chief at trial; or (iii) the item was obtained from or belongs to the defendant." Under *Brady v. Maryland*, the government has constitutional duty to timely disclose information "favorable to an accused." 373 U.S. 83, 87 (1963). This requirement also applies to suppression hearings that involve "a challenge to the truthfulness of allegations in an affidavit for a search warrant." *United States v. Barton*, 995, F.2d 931, 935 (9th Cir. 1993), *see also Smith v. Black*, 904 F.2d 950, 965 (5th Cir. 1990).

#### *1. "Possession, Custody or Control"*

For the production duty to be enforceable against the government, the government must be in possession, custody or control. The Fifth Circuit in *United States v. Trevino* held that a statutory

interpretation of Rule 16[2] necessitated defining "government" as the "defendant's adversary, the prosecution." 556 F.2d 1265, 1271 (5th Cir. 1977). However, the Fifth Circuit noted that the *Trevino* decision was "not to be read as a comprehensive survey of the boundaries of required disclosure under [*Brady,* Rule 16 and the Jencks Act]." *Id.* at 1272. It is clear that the *Trevino* decision was not to be a hard-and-fast rule since doing so might lead some future prosecutor to attempt to avoid disclosure of evidence by "leaving relevant evidence to repose in the hands of another agency while utilizing his access to it in preparing his case for trial."*Id.* Instead, the Fifth Circuit held courts should engage in a case-by-case analysis as to whether an item was "within the government's possession, custody or control for Rule 16 and *Brady* disclosure." *Id.*

Two years later, the Fifth Circuit, in a case involving perjured testimony and whether the knowledge by the state agents of the perjury could be imputed to the federal prosecution team, held that it refused to "draw a distinction between different agencies under the same government, focusing instead upon 'prosecution team' which includes both investigative and prosecutorial personnel." *United States v. Antone*, 603 F.2d 566, 569 (5th Cir. 1979). When "two governments, state and federal, pooled their investigative energies" the Court endorsed a "case-by-case analysis of the extent of interaction and cooperation between the two government." *Id.* at 569-70.

This analysis was extended to *Brady* by the Fifth Circuit in *United States v. Auten*, 632 F.2d 478 (5th Cir. 1980). "If disclosure were excused in instances where the prosecution has not sought out information readily available to it, we would be inviting and placing a premium on conduct unworthy of representatives of the United States Government. This we decline to do." *Id.* at 481.

In the instant case, the arrest warrant that precipitated the events here in Louisiana was issued by state authorities in California. While California state agents were pursuing their own murder

---

[2]At the time of the *Trevino* decision, the relevant subsection was Rule 16(a)(1)(C).

investigation in California and Texas, federal agents were executing the state arrest warrant in Louisiana. While executing the state arrest warrant, federal agents discovered the firearm in Durst's hotel room. California agents were then responsible for acquiring the Louisiana search warrant, which was jointly executed. Without the impetus of the state arrest warrant, there would have been no reason for federal agents to have been in Durst's hotel room to discover the firearm and there would conceivably, be no federal prosecution at this time. For the prosecution to now claim that it is not in possession of the handwriting comparisons that were used as the basis for the various warrants is specious, at best. Cooperation between the state and federal investigative and prosecution groups is the reason this case exists, and the prosecution certainly has access to the handwriting comparisons through this same cooperation.

### *2. Materiality*

The handwriting comparisons must be "material" to fall within the government's duty to produce them. F.R.Cr.P. 16(a)(1)(E). Durst's motion to suppress seeks to suppress the evidence from his arrest, subsequent interrogation, the warrantless search of his hotel room and the execution of a search warrant on that same hotel room after the prior, warrantless search. The handwriting comparisons were relied on by the affiants in the affidavits submitted in the warrant applications. The government has already conceded there was a "mis-description" of one handwriting comparison's result in the Romero Affidavit. Rec. Doc. 70 at 3. While it appears to be a "inconsequential" mistake, it is a mistake and therefore it is understandable why the defense would not want to rely on the Clarke Affidavit's supposed "history" of all the handwriting comparisons referenced in the warrant applications and is instead requesting the actual comparisons.

Additionally, there are a total of six comparisons, but only two were mentioned in the arrest warrant application and the Louisiana search warrant application. The other four were mentioned in the Texas search warrant. Particularly, the examiner William Leaver's June 2002 report was

7

referenced in the arrest warrant and Louisiana search warrant, however his February 2001, October 2001 and July 2003 comparison reports were not. It is material to the defense's argument regarding the reliability of the affidavits submitted that one examiner had four different comparisons, but only one (and not the most recent one) referenced in the affidavits. Further, it is known that Leaver's February 2001 comparison did name another suspect at the time as the writer. Rec. Doc. 70 at 9. Thus, the comparisons are material to Durst's defense and motion to suppress.

The handwriting comparisons are indeed material to the defense's claims and are deemed to be in the government's possession due to the cooperative nature of the investigation leading to the claims before this court. The government must produce the six handwriting comparisons detailed above.

### B. *Franks* Challenge

The defense has framed the issue as whether Durst is entitled to the handwriting comparisons because of his *Franks* challenge. The government has argued that the question is whether the comparisons are relevant to a *Franks* hearing. Magistrate Judge Shushan's order framed the issue as whether Durst was entitled to the handwriting comparisons to make the preliminary showing as required by *Franks*. However, given that this Court has already decided the comparisons are material and the government must produce them, it is irrelevant whether the defense is entitled to them because of the *Franks* challenge or not.

### III. Conclusion

Accordingly,

IT IS ORDERED that Magistrate Judge Shushan's Order dated August 3, 2015 is set aside. (Rec. Doc. 80).

IT IS FURTHER ORDERED that Defendant Robert Durst's Motion to Compel Production of Handwriting Comparisons is GRANTED. (Rec. Doc. 58).

IT IS FURTHER ORDERED that the United States Attorney's Office must produce the six handwriting comparisons described in this order, no later than 3:00 pm on the 11th of September, 2015.

New Orleans, Louisiana, this 8th day of September, 2015.

                                                HELEN G. BERRIGAN
                                    UNITED STATES DISTRICT JUDGE